IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

LEE ROBINSON, )
)
    Plaintiff, )
)
v. ) Case No. CIV-15-171-W
)
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security )
Administration, )
)
    Defendant. )

**REPORT AND RECOMMENDATION**

Plaintiff, Lee Robinson, seeks judicial review of the Social Security Administration's denial of disability insurance benefits (DIB). This matter has been referred by United States District Judge Lee R. West for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

**I.    Procedural Background**

Plaintiff protectively filed his current application for DIB on June 8, 2012 and alleged a disability onset date of April 1, 2006. The Social Security Administration (SSA) denied the application initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record (AR) [Doc. No. 10], 9-15. The Appeals Council denied Plaintiff's request for review. AR 1-3. This appeal followed.[1]

---

[1] Plaintiff has filed three prior unsuccessful applications for DIB. *See* AR 9 (ALJ's current decision, reciting procedural history). Plaintiff's onset date for purposes of the current application corresponds to the day after the SSA rendered a previous, unfavorable decision. AR 59-72 (ALJ decision dated March 31, 2006).

## II. The ALJ's Decision

Plaintiff last met the insured requirements of the Act on December 31, 2009 and, therefore, the applicable period of review is April 1, 2006, the alleged onset date, through December 31, 2009, Plaintiff's date last insured. AR 11. The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 404.1520. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity during the relevant period. AR 11. At step two, the ALJ determined that Plaintiff has the following severe impairments: glaucoma and right-eye blindness. AR 12. At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> [T]he claimant ha[s] the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: no climbing ladders, ropes, or scaffolds; occasionally climbing stairs; and no work around unprotected heights or dangerous machinery. The claimant has monocular vision.

AR 12-13. At step four, the ALJ found that Plaintiff could perform his past relevant work as a janitor supervisor and a housekeeper aide. AR 14. The ALJ concluded, therefore, that Plaintiff was not disabled during the period under review for purposes of the Social Security Act. AR 14, 15.

## III. Plaintiff's Claims

Plaintiff raises the following claims of error:

(1) The ALJ's step four determination is erroneous because:

- the ALJ did not follow the requirements of SSR 96-8p;

- the ALJ failed to state what weight she gave to the opinion of the medical expert (ME), Dr. Murphy;

- the RFC does not express the limitations resulting from Plaintiff's monocular vision;

- the ALJ did not make proper findings as to the physical and mental demands of Plaintiff's past relevant work at phase two of the step-four analysis; and

- the ALJ did not make proper findings comparing Plaintiff's limitations to the demands of his past relevant work at phase three of the step-four analysis.

(2) The ALJ failed to discuss the significance of the disability determination of the Department of Veterans Affairs (VA) and to further develop the record prior to rejecting that determination.

## IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable

rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. <u>Analysis</u>

Plaintiff primarily claims that the ALJ erred in his analysis at step four of the sequential evaluation process. The only medically determinable impairment at issue in this action is Plaintiff's vision impairment due to glaucoma and right-eye blindness during the period of time under review, April 1, 2006 through December 31, 2009. As to the latter, the record indicates Plaintiff injured his right eye during military service, *see* AR 265, and he was discharged from the military in or before 1977. As the ALJ found, "it appears that the claimant's right eye trauma occurred well before his alleged onset date, and he did work after his eye injury." AR 14. Plaintiff does not challenge this finding.

### A. The Step-Four Requirements

A claimant bears the burden at step four of proving "his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993). However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ must make specific and detailed predicate findings at each of three phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In the first phase, the ALJ is required to evaluate a claimant's RFC. *See id*. In the second phase, the ALJ "must determine the physical and mental demands of the claimant's past relevant work." *Id*. "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*.

4

### *Step Four – Phase One*
### *Residual Functional Capacity*

Plaintiff first argues that the ALJ erred at phase one of the step-four analysis because the ALJ did not make a "function-by-function" assessment of his work-related abilities as required by Social Security Ruling ("SSR") 96–8p.

In relevant part, SSR 96–8p provides that

> [t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 [C.F.R. §] 404.1545. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

*Id.*, 1996 WL 374184 at *1. In assessing Plaintiff's RFC, paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 require the ALJ to specifically assess a claimant's physical abilities, mental abilities, and other abilities affected by the claimant's impairment(s). *See* 20 C.F.R. §§ 404.1545(b)-(d). Paragraph (b) requires the ALJ to consider "certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)." 20 C.F.R. §§ 404.1545(b). Paragraph (c) requires the ALJ to consider "certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting." 20 C.F.R. §§ 404.1545(c). And paragraph (d) requires the ALJ to consider [o]ther abilities affected by impairment(s)" such as impairment(s) of vision, hearing, or other senses." 20 C.F.R. § 404.1545(d). In short, SSR 96–8p requires the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence" when assessing a claimant's RFC. SSR 96–8p, 1996 WL 374184 at *7.

The ALJ found that Plaintiff has no exertional limitations as to the physical demands of work activity, i.e., sitting, standing, walking, lifting, carrying, pushing, pulling, or any other physical functions. *See* AR 13 (noting lack of any evidence in the record to show that the claimant is "unable to walk, stand, sit, and otherwise move about during his activities of daily living"). Plaintiff does not challenge this finding.

Instead, Plaintiff claims the ALJ did not properly account for his non-exertional impairments and specifically, his monocular vision. *See* Plaintiff's Brief at p. 7 ("While it is true that monocular vision is in the RFC, the *limitations* in performing work arising therefrom are not in the RFC."). According to Plaintiff, "the ALJ never undertook any analysis of what actual limitations the right eye blindness might impose[.]" *See id*. Plaintiff contends the ALJ should have included: (1) reduced field of vision; (2) complete loss of depth perception; and (3) a need for "reduced light to his eye." *See id*. at pp. 7-8. Plaintiff fails to address any evidence in the record in making this argument.

Contrary to Plaintiff's contention, the ALJ specifically and thoroughly addressed limitations from Plaintiff's monocular vision. First, the ALJ obtained testimony from the ME, Dr. Murphy, to assist in determining Plaintiff's impairments. Dr. Murphy reviewed the relevant medical evidence and testified that Plaintiff is "functionally blind in the right eye" and that the "left eye appears to be normal visual acuity of 20/20." AR 31. Dr. Murphy based his opinion on the most recent medical record regarding Plaintiff's vision during the relevant period under review. *Id*. (referring to AR 913). He concluded that Plaintiff's sole limitation was "monocular vision." AR 31-32. Plaintiff does not challenge this finding.[2]

---

[2] Instead, Plaintiff challenges the ALJ's purported failure to address the weight given to Dr. Murphy's opinion. But Plaintiff does not explain why a failure to address the weight given to
. . . cont'd . . .

The ALJ then relied on the testimony of a vocational expert (VE) to address any non-exertional limitations resulting from Plaintiff's monocular vision. In his first hypothetical, the ALJ asked the VE to assume a person "in age from 50 to 58 years," "basically within a sedentary range,"[3] but the person could not climb ladders, ropes or scaffolds, should not be exposed to unprotected heights or dangerous machinery and could climb stairs only occasionally. AR 38. In addition, the person would have monocular vision which, in response to the ALJ's question as to whether that would be "something that vocationally has weight or value," the VE testified the person would have problems with depth perception and peripheral vision. AR 39. The VE testified that such a person would not be able to perform Plaintiff's past relevant work. *Id.*

In the second hypothetical, the ALJ included the same limitations, but eliminated any limitations related to "lifting, carrying, standing, sitting or walking." AR 40. The VE testified that Plaintiff could perform his past relevant work. When asked if the VE's opinion would change if Plaintiff's monocular vision were impacted by light, the VE testified that "light shouldn't make a difference." AR 41. On further questioning, the VE testified that "just wearing sunglasses alone or needing the lights dimmer" would not affect the past relevant work,

---

Dr. Murphy's opinion constitutes error. It is clear that the ALJ gave great weight to Dr. Murphy's opinion as he included monocular vision as a limitation in the RFC. Thus, the ALJ's failure to expressly state the weight given to Dr. Murphy's opinion does not constitute error. *See Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014) ("[A]n ALJ's failure to weigh a medical opinion involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity."); *see also Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

[3] The ALJ asked the VE to assume the hypothetical individual could lift, carry, push or pull less than ten pounds frequently, stand or walk two hours total and sit six hours total. AR 38.

but "[i]f light perception is causing a visual acuity issue, that's a whole another [sic] set of, issues." AR 43.[4]

As set forth above, the ALJ found that Plaintiff could perform work at all exertional levels. The ALJ relied on the testimony of the ME and her own review of the medical evidence. *See* AR 12 ("[T]here is no evidence of any impairment other than vision impairment prior to 2011, which is two years after the claimant's insured status expired."). Plaintiff does not challenge this finding.

The ALJ's RFC assessment reflects with precision all – and only all – the impairments borne out by the evidentiary record. The ALJ's hypotheticals to the VE accounted for the limitations resulting from monocular vision, specifically including any limitations due to depth perception, peripheral vision or light sensitivity. The ALJ also addressed limitations related to his monocular vision with respect to climbing ladders, ropes or scaffolds, occasionally climbing stairs, and working around unprotected heights or dangerous machinery. Plaintiff does not point to any evidence of record that would require additional limitations and the Court's own review of the record shows no further limitations are supported by the record. Thus, no error exists with respect to the RFC determination at phase one of the step-four analysis. *Compare Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (response to hypothetical question that included all

---

[4] Plaintiff identifies no medical or other evidence in the record to suggest that light perception has caused "visual acuity" issues as referenced by the VE. Indeed Plaintiff does not claim any error in reliance on this testimony by the VE. Instead, in wholly conclusory fashion, Plaintiff states that he "need[s] reduced light to his eyes" and that "[t]he ALJ never discusses this work-related limitation that *eliminated work with the VE.*" *See* Plaintiff's Brief at p. 8 (*citing* AR 41; emphasis added). Plaintiff misrepresents the record. In fact, the portion of the hearing transcript cited by Plaintiff reflects just the opposite. The VE testified: "[a]s I understand the hypothetical he has monocular vision which is, should be normal vision in one eye and no vision in the other, that, *light shouldn't make a difference.*" AR 41 (emphasis added). And, when further questioned, the VE testified that "just wearing sunglasses alone or needing the lights dimmer" would not prevent his past jobs. AR 43.

limitations that ALJ ultimately included in his RFC assessment, but not all limitations claimed by the plaintiff, constituted substantial evidence for ALJ's disability decision); *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (stating that hypothetical to vocational expert "must include all (and only) those impairments borne out by the evidentiary record").

*Step Four – Phase Two*
*Physical and Mental Demands of Plaintiff's Past Relevant Work*

Plaintiff claims the ALJ erred at phase two of the step-four analysis because the ALJ did not adequately develop the record with respect to the physical demands of his past relevant work.[5] The ALJ asked the VE to identify Plaintiff's past relevant work. After making inquiry to Plaintiff with respect to his janitor job, the VE testified that Plaintiff's past relevant work included janitor supervisor and housekeeper aide. AR 36. The VE further testified that this work is performed at the medium, unskilled level. AR 37.

The ALJ referenced occupational entries in the Dictionary of Occupational Titles (DOT) when identifying Plaintiff's past relevant work and questioning the VE. AR 35. An ALJ is permitted to rely upon the DOT when determining the demands of past relevant work as it is generally performed in the national economy. *See* 20 C.F.R. § 404.1560(b)(2); SSR 82–61, 1982 WL 31387, at *2; *see also Hayden v. Barnhart*, 374 F.3d 986, 991 (10th Cir. 2004); *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1349 (10th Cir. 1990). The ALJ found the DOT listed the job of janitorial supervisor as medium-skilled and the job of housekeeper aide as medium-unskilled. AR 35.

---

[5] In order to be considered past relevant work, a job must have been done within the past fifteen years, lasted long enough for the individual to learn how to do the job, and been substantial gainful activity. *See* 20 C.F.R. § 404.1560(a)(1).

9

At phase two, the ALJ is required to make a finding regarding "[t]he functional demands and job duties of [Plaintiff's past] occupation as generally required by employers throughout the national economy." *See* SSR 82–61, 1982 WL 31387 at *2; *see also Winfrey*, 92 F.3d at 1023. The ALJ's reference to the DOT is adequate to state the demands of an occupation as it is generally performed. *See Thunderbull v. Barnhart*, 85 F. App'x 67, 70-71 (10th Cir. 2003) (ALJ properly considered demands of Plaintiff's past relevant work; DOT provided that work was performed at the medium exertional level and the DOT's definitions are "reliable evidence at step four of the functional demands and job duties of claimant's past job"); *Campbell v. Astrue*, 525 F.Supp.2d 1256, 1264 (D. Kan. 2007) ("Because the ALJ incorporated by reference the physical and mental demands of the two jobs into his decision, the court finds that the ALJ substantially complied with the requirement that he make findings setting forth the physical and mental demands of the [claimant's past relevant work].").

No evidence exists in the record that is inconsistent with the VE's testimony regarding the demands of Plaintiff's past relevant work. Significantly, Plaintiff does not challenge the validity of the VE's testimony concerning the vocational characteristics of Plaintiff's previous jobs as they are generally performed in the national economy.

Moreover, as the Commissioner points out, the DOT entries for the two jobs identified as Plaintiff's past relevant work contain no requirement of depth perception or peripheral vision. *See* DOT 381.137-010 (Supervisor, Janitorial Services), 1991 WL 673254 (4th rev. ed. 1991); DOT 323.687-010 (Cleaner, Hospital – Alternate Titles: Housekeeper, Hospital), 1991 WL 672782 (4th rev. ed. 1991).

Finally, the ALJ addressed the fact that she considered Plaintiff's past relevant work, as "actually and generally performed" and relied on the fact that Plaintiff "performed both of these

jobs after he sustained his traumatic eye injury." AR 14. *Compare Lindsey-Evans v. Barnhart*, No. Civ.A. 02-2326-GTV, 2004 WL 632864 at *5 (D. Kan. March 26, 2004) (unpublished op.) (ALJ's reliance on VE testimony that plaintiff could perform past relevant work as a housekeeper despite vision loss constituted substantial evidence as to requirements of such work; conclusion was "bolstered by the fact that [p]laintiff apparently worked as a housekeeper after her alleged onset of disability").[6] On the record presented, any alleged error with respect to the ALJ's phase-two finding is without merit and should be rejected.

### Step Four – Phase Three
### Whether Plaintiff Can Meet the Demands of His Past Relevant Work

At phase three, the ALJ stated that "[a]fter careful consideration of the entire record" she "accept[ed] the testimony of the VE and "concurred" with the VE's testimony that Plaintiff is able to perform his past relevant work, "classified as medium and unskilled" based on his residual functional capacity. AR 14. Plaintiff claims the ALJ improperly delegated her fact-finding responsibilities to the VE. But the ALJ did not improperly delegate her step-four findings to the VE. Instead, she approvingly relied on that testimony and made her own independent findings. *See Doyal*, 331 F.3d at 761 (finding the ALJ did not improperly delegate to the VE her step-four findings; instead, "he quoted the VE's testimony approvingly, in support of his own findings at phases two and three of the analysis" and "[t]here was nothing improper about this"). The Court finds no error at phase three of the *Winfrey* step-four analysis.

---

[6] As previously noted, here the ALJ found that Plaintiff's "right eye trauma occurred well before his alleged onset date, and he did work after his eye injury." AR 14.

## B. The ALJ's Assessment of the VA Disability Determination

Plaintiff also challenges the ALJ's assessment of the 100% disability rating he received from the VA. Plaintiff contends the ALJ failed to discuss the significance of the VA disability rating and, therefore, a remand is required.

The Court Transcript Index of the Record identifies Exhibit 13E as: "Misc. Disability Development and Documentation, dated 07/07/2014, from Department of Veterans Affairs Service Connected Letter." A review of Exhibit 13E, itself, demonstrates it is an undated "to whom it may concern" letter from C. Jason McClellan, Acting Director, Department of Veterans Affairs, VA Regional Office, Muskogee, Oklahoma. The letter states: "The official records of the [VA] disclose that L.O. Robinson is entitled to receive service connected compensation at the 100 percent rate effective October 26, 2004. The evaluation is permanent with no future examinations scheduled." AR 207.[7]

It is well-established that a disability rating by another agency, while not binding on the Commissioner, "is evidence that the ALJ must consider and explain why he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). Clearly here, the ALJ considered the evidence. *See* AR 14. The issue, therefore, is whether the ALJ sufficiently explained why he did not find the VA disability rating persuasive.

The ALJ addressed the fact that the VA's rating was not binding on the Social Security Administration. AR 14. The ALJ also noted that the rating contained no explanation as to what the disability status was based upon. *Id*. The ALJ then stated that she was giving "little weight"

---

[7] It is unclear at what point in time the ALJ acquired the VA rating. The hearing, conducted on July 9, 2014, just two days after the purported date of the VA rating letter, demonstrates the letter was not included in the record at that time. AR 26 (identifying records admitted into evidence). And the ALJ's decision does not explain how the letter was acquired.

to the VA rating "because it is not supported by any medically acceptable clinical and laboratory diagnostic techniques and is not accompanied by any explanation whatsoever." *Id*. Thus, contrary to Plaintiff's assertion, the ALJ sufficiency explained the reasons for not finding the disability rating persuasive. Plaintiff fails to identify any specific error and the broad allegation that the ALJ failed to comply with the dictates of *Grogan* is belied by the record. *Compare Breneiser v. Astrue*, 231 F. App'x 840, 845 (10th Cir. 2007) (rejecting claimant's argument that the ALJ should have given the VA's rating more weight, where claimant did not identify "any specific factual finding or evidence in the [VA's] disability determination that should have changed the [ALJ's] decision") (citation omitted). Accordingly, Plaintiff's argument – that the VA determination deserved greater weight than it was ultimately afforded – is little more than a request for this Court to reweigh the evidence, which it cannot do. *See Bowman*, 511 F.3d at 1272.

Plaintiff further claims that because the ALJ found the VA rating was not accompanied by any explanation, the ALJ had a duty to further develop the record. The Commissioner responds that the record includes "hundreds of pages of VA records, as well as other medical evidence about Plaintiff's vision impairment during the relevant period." *See* Commissioner's Brief at p. 13. The Commissioner further notes that the ALJ obtained testimony from the ME concerning Plaintiff's vision impairment. *Id*. The Commissioner contends no duty to further develop the record exists where, as here, the evidence was sufficient to identify Plaintiff's vision impairment and the degree of limitations resulting therefrom. *Id*.

The Court's own review of the record shows that Plaintiff's medical records from the VA include multiple references to Plaintiff's 100% "Service Connection/Rated Disabilities" and attribute the disability rating to "blindness, bilateral." *See, e.g*., AR 257, 272, 287, 295

(nonexhaustive list of references). And VA records from March 2012 include Plaintiff's report that he lost his vision when he was "blown up" with an "m-16." AR 265. Those same records state that Plaintiff sees a private physician for "specialty eyecare" and "wants to continue care with him." *Id*.

The record also includes VA medical records provided in August 2012 and May 2014 in response to requests by the Mitzner Law Office (counsel representing Plaintiff both at the agency level and before this Court). *See, e.g.*, AR 425; 426-836 (411 pages of medical records); AR 837; 838-905 (68 pages of medical records). In June 2013, the SSA notified Mr. Mitzner that exhibits pertaining to the disability claim were available for review and reminded Mr. Mitzner that it is the claimant's responsibility to provide medical evidence of any impairments and their severity during the time period for which a disability is claimed. AR 191-192.

Plaintiff concedes that he was represented by an attorney, *see* Plaintiff's Brief at p. 14, but contends even with such representation, the ALJ had a duty to develop the record.[8] Although the administrative law judge has a duty to develop the record, where a plaintiff is represented by counsel, as Plaintiff was in this case, the administrative law judge is ordinarily "'entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored.'" *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (*quoting Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997)). Under the circumstances of this case, Plaintiff's counsel cannot now fault the ALJ for not further developing the record.

---

[8] Plaintiff's Appointment of Representative dated July 8, 2014, lists both Miles Mitzner and Michael Harris as his representatives. AR 20. Mr. Harris appeared at the hearing before the ALJ. The record also includes another Appointment of Representative dated June 7, 2012 and identifies Mr. Mitzner as Plaintiff's representative. *See* AR 77.

Significantly, Plaintiff makes no claim that any further development of the record would support a different result nor does Plaintiff attempt to identify how additional records from the VA would conflict with the evidence of record. "The ALJ's duty to further develop the record is triggered by conflicts, inconsistencies or inconclusive findings in the medical record requiring further investigation." *Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015) (*citing Hawkins*, 113 F.3d at 1166-67). Here, the evidence is unequivocal that Plaintiff has right-eye blindness. Under these circumstances, substantial evidence supports the ALJ's determination and the ALJ had no further duty to develop the record.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by February 9, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 26th day of January, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE